UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COLLEEN FRANCES LADWIG,

                        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

                        Defendant.

Case No. 2:17-cv-00518-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On February 9, 2009, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning August 1, 2008. Dkt. 17, Administrative Record (AR) 1510. Both applications were denied on

initial administrative review and on reconsideration. *Id.* Following a hearing, an administrative law judge (ALJ) applied the Commissioner's five-step sequential disability evaluation process, finding in a decision dated December 14, 2011, that plaintiff could perform past relevant work at step four of that process and therefore that she was not disabled. AR 14-28.

Plaintiff appealed that decision to this Court, which on July 26, 2013, reversed the ALJ's decision and remanded the matter for further administrative proceedings. AR 660-666. On remand, following a hearing held before the same ALJ, in a decision dated January 20, 2015, plaintiff again was found to be capable of performing past relevant work at step four of the sequential disability evaluation process and therefore that she was not disabled. AR 637-659.

Once more plaintiff appealed that decision, and once more the Court reversed the ALJ's decision and remanded the matter for further administrative proceedings. AR 1564-1575. On remand, a hearing was held before a different ALJ, at which plaintiff appeared and testified, as did a vocational expert. AR 2008-2065. In a decision dated December 8, 2016, the ALJ found plaintiff had severe impairments consisting of obesity, status post cervical spine surgery, lumbar degenerative disc disease, status post bilateral carpal tunnel surgery, an affective disorder, and an anxiety disorder. AR 1513.

The ALJ nevertheless found plaintiff could perform other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process, and therefore that she was not disabled. AR 1510-1529. It appears the Appeals Council did not assume jurisdiction of the matter, making the ALJ's decision the Commissioner's final decision, which plaintiff appealed in a complaint filed with this Court on April 6, 2017. Dkt. 3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in

the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in determining that plaintiff did not object to the admission of a 2009 Cooperative Disability Investigations Unit ("CDIU") report;

(2) in failing to follow the Court's second remand order directing the ALJ to re-evaluate the October 2013 opinion of Sharon A. Osea, M.D., and reweigh all of the medical opinion evidence;

(3) in giving little weight to the opinions of examining psychologist Sylvia Thorpe, Ph.D.;

(4) in failing to reweigh the opinions of examining psychiatrist Anselm Parlatore, M.D.

(5) in assessing plaintiff's residual functional capacity ("RFC"); and

(6) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore recommends that the Court affirm the decision to deny benefits.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.

1971)). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn*, 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I. <u>The ALJ's Error in Finding Plaintiff Did not Object to the Admission of the 2009 CDIU Report Was Harmless</u>

In his decision, the ALJ considered a 2009 Cooperative Disability Investigations Unit ("CDIU") report that was initiated based on inconsistencies the state Disability Determination Services office found in plaintiff's allegations and presentations. AR 93-114. The ALJ overruled plaintiff's counsel's objections to admitting that report at the October 2016 hearing, finding no evidence plaintiff's counsel objected to its admission at any of the earlier hearings. AR 1511. Plaintiff correctly points out, though, that plaintiff's counsel did object thereto at the October 2011 hearing. AR 577-78.

Plaintiff argues this error is not harmless, because it "raises the question of whether the ALJ even read any of the transcript or decision from the prior hearing[s]." Dkt. 23, p. 4. There is no indication, however, that while the ALJ clearly got the above fact wrong, he failed to read or otherwise comprehend the remainder of the transcript or other portions of the record. As such, the Court declines to consider this a basis for finding harmful error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate disability conclusion).

Plaintiff's counsel objected to admitting the CDIU report on the basis that it contained

hearsay and was "not signed under any type of oath." AR 577-78; *see also* AR 2012. The ALJ in overruling the objection noted that it went to "the weight that should be given" to the report, and not to the issue of admissibility. AR 2013-2014, 1511. Plaintiff argues the lack of any signature should have precluded the report's admission, asserting as support for that argument that "Social Security Administration form SSA-795 requires statements from claimants or other person to be made under penalty of perjury," and that "[w]itnesses at administrative hearings are placed under oath prior to testifying." Dkt. 23, p. 5.

The Court has not been provided with a copy of the above-referenced form. Thus, it is not at all clear that claimants and other persons are required to use that form, that those persons who provide statements outside the administrative hearing context are required to make them under penalty of perjury, or that an ALJ is limited to considering only statements that are made under penalty of perjury. As the ALJ noted, in regard to the type of evidence that may be considered when evaluating a disability claim, the Commissioner's regulations merely refers to "relevant evidence." AR 1511 (citing 20 C.F.R. § 404.1527(b), § 416.927(b)). Further, "evidence" is defined in 20 C.F.R. § 404.1513(a) and § 416.913(a) as "anything you or anyone else submits to us or that we obtain that relates to your claim."

And as defendant points out, the Social Security Act does not preclude consideration of hearsay. *See* Dkt. 27, p. 3 (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (noting that the Social Security Act grants the Commissioner the authority "to receive evidence 'even though inadmissible under rules of evidence applicable to court procedure,'" and that hearsay under the Social Security Act "is thus admissible up to the point of relevancy") (quoting Section 205(a) and (b) of the Social Security Act). As plaintiff neither argues nor shows that the CDIU report is irrelevant to her disability claim, the ALJ was permitted to admit and consider it, and therefore

did not err in doing so.

II. <u>The ALJ Properly Evaluated and Weighed the Medical Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

There are several categories of medical professionals that typically provide information that is reviewed during the Social Security application and appeal process. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Some of the most common are: First, medical doctors in the role of treating physicians, who actually treated the claimant; second, medical doctors in the role of examining physicians, who examined but did not treat the claimant; third, medical doctors who are non-examining physicians and

neither treated nor examined the claimant but reviewed medical records and other information; and fourth, acceptable medical sources who are medical professionals but do not fall into the category of any type of medical doctor; and fifth, other sources. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012); *Lester*, 81 F.3d at 830; *see also Leon v. Berryhill*, 874 F.3d 1130, 1133-34 (nurse practitioner is an acceptable medical treating source for claims filed after March 27, 2017, under updated regulation 20 C.F.R. § 404.1527 and § 416.920c); *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (treatment provider with a PhD in nursing was an "other source" under the pre-March 27, 2017 regulation even though she was the primary treating medical provider for plaintiff); *Gomez*, 74 F.3d at 971 ("acceptable medical sources" included in regulations are, among others, licensed physicians and licensed or certified psychologists); 20 C.F.R. § 404.1513(a)-(d), § 404.1529(a),(c), § 416.913.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On

the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

### A. The ALJ Complied with the Court's Second Remand Order

At the beginning of his decision, the ALJ stated that "the only specific error found by the District Court [in its second remand order] was that the decision did not properly evaluate one medical opinion regarding [plaintiff's] physical limitations (the October 2013 opinion provider Dr. Osea)." AR 1510. The ALJ further stated that the Court "noted that this error may have resulted in a flawed residual functional capacity finding," and that the Court ordered the ALJ on remand to re-evaluate Dr. Osea's opinion and plaintiff's RFC, and proceed to steps four and five of the sequential disability evaluation process "as appropriate." *Id.*

Plaintiff argues this is an inaccurate characterization of the Court's second remand order. Rather than limiting the ALJ to merely re-evaluating the opinion of Dr. Osea, plaintiff claims, the Court specifically directed the ALJ to also re-weigh "all of the medical opinion evidence" along with plaintiff's RFC assessment. Dkt. 23, p. 6 (quoting AR 1575). Plaintiff asserts, though, that there is no evidence the ALJ actually did this, other than specifically with respect to the opinions of Dr. Osea and three other medical sources. *Id.*

As defendant points out, however, and as plaintiff herself notes, the Court qualified the

ALJ's duty to "reweigh all of the medical opinion evidence" to "as appropriate." AR 1575. The implication of this language, therefore, is that the ALJ was required to reweigh that evidence *if* the ALJ deemed it appropriate to do so. The problem, though, is that it is unclear from the ALJ's decision that the ALJ made that determination. Rather, the ALJ expressly stated that because the Court "found no error in the analysis of the [medical] opinions in the prior [ALJ's] decision, apart from that of Dr. Osea," then "except for Dr. Osea's opinion, I incorporate by reference the opinions from" that prior decision. AR 1523.

Had the ALJ indicated that he had considered those other opinions and determined that reweighing them was unnecessary or not appropriate, the ALJ would have been in compliance with the Court's second remand order. But given that the ALJ did not do this, the Court cannot say the ALJ complied with that remand order in this respect. That being said, the Court finds this error to be harmless. This is because the ALJ offered specific reasons for discounting Dr. Osea's opinion, none of which plaintiff challenges, and at least two of which were specific to Dr. Osea's own opinion and findings and thus do not depend on the credibility of the other medical opinion source evidence in the record. For example, the ALJ found:

- Dr. Osea's opinion was internally inconsistent regarding the limitations she assessed;

- those limitations were inconsistent with the objective findings Dr. Osea recorded, with "the longitudinal medical evidence," and with plaintiff's activities; and

- Dr. Osea's opinion appeared to rely in large part on plaintiff's self-report regarding her pain symptoms.

AR 1523-24. These are valid reasons for rejecting an examining medical source's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (a medical opinion may be rejected if it is based "to a large extent" on a claimant's self-report that has been "properly discounted as

incredible")[1]; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between a medical source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ need not accept a medical opinion if it is inadequately supported by clinical findings or by the record as a whole).

B. The ALJ Offered Valid Reasons for Rejecting Dr. Thorpe's Opinion

Sylvia A. Thorpe, Ph.D., conducted a psychological examination of plaintiff in late May 2015, opining that plaintiff was moderately to severely limited in a number of mental functional areas, and that it appears she may be paranoid schizophrenic with delusions of grandeur and persecution. AR 1640. The ALJ gave "little weight" to this opinion, stating that Dr. Thorpe "did not provide sufficient findings to substantiate" it, that she "failed to review any treatment notes other evidence" that "includes extensive psychiatric treatment notes, which show neither findings nor a diagnosis regarding paranoid schizophrenia or any other psychotic disorder," and that the opinion was inconsistent with both the overall mental health record and plaintiff's activities. AR 1525-1526.

In challenging the ALJ's rejection of Dr. Thorpe's opinion, plaintiff again points to what she asserts is the ALJ's error in not specifically reweighing all of the medical opinions. As with the ALJ's treatment of Dr. Osea's opinion, though, here too the ALJ gave reasons for rejecting Dr. Thorpe's opinion that are specific to her own findings and opinion. And as discussed below, those reasons are legitimate. Nor does plaintiff explain how any of the medical opinions the ALJ

---

[1] Plaintiff does not contest the ALJ's adverse credibility determination. *See* AR 1518-1522.

1 allegedly failed to reweigh call into question the validity of any of the reasons the ALJ relied on
2 to reject Dr. Thorpe's opinion.

Plaintiff next asserts the ALJ erred in discounting Dr. Thorpe's opinion on the basis that she failed to review any treatment notes or other evidence, essentially arguing it was sufficient for her to rely on her own diagnoses, mental status examination results, and observations. While it is true that an examining medical source is not *required* to consider other, outside evidence before forming an opinion, as defendant notes the extent to which the medical source is familiar with such evidence is a relevant factor an ALJ may consider in deciding what weight to give that opinion. 20 C.F.R. § 404.1527(c)(6), § 416.927(c)(6).

Plaintiff also contests the ALJ's statement that the record shows no findings or diagnosis of paranoid schizophrenia or other psychotic disorder. Specifically, plaintiff argues that while Dr. Thorpe was the first to diagnose paranoid schizophrenia, it has not been contradicted by any other medical evidence. But the fact that no other medical source has similarly diagnosed plaintiff itself calls that diagnosis into question. For example, despite evaluating plaintiff in 2009 and 2014, Anselm Parlatore, M.D., limited his diagnoses to major depression, sleep apnea, and posttraumatic stress disorder. AR 225, 1631. Plaintiff also was evaluated by Kees Hoffman, Ph.D., in 2010, and by Carl Epp, Ph.D., in both 2010, and 2013, neither of whom diagnosed paranoid schizophrenia. AR 286, 404, 1598. The diagnoses Dr. Osea provided are restricted to depression and anxiety as well. AR 1182.

It is reasonable to assume that if Dr. Thorpe's 2015 diagnosis had been correct, some indication of its presence would have been observed by these and the other medical sources who treated and examined plaintiff at some point during the prior six years. Plaintiff nevertheless points to the marked to severe limitations in maintaining appropriate behavior and completing a

1  normal work day and work week due to psychological-based symptoms that Dr. Parlatore found

2  in 2014 (AR 1632), as evidence of the existence of paranoid schizophrenia. Yet Dr. Parlatore did

3  not make any such diagnosis. And while plaintiff is apparently directing criticism at the ALJ for

4  having "succumb[ed] to the temptation to play doctor" (Dkt. 23, p. 10 (quoting *Schmidt v.

5  Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)), if the Court interpreted these marked to severe

6  limitations as being an indicator of the presence of that diagnosis, then the same "playing doctor"

7  criticism may be directed at the Court.

8      Plaintiff further argues Dr. Thorpe's opinion was based on her own observations and

9  testing. In particular, plaintiff points to the comments that "THIS WOMAN IS UNUSUAL" and

10  "THIS LADY IS PROB PARANOID SCHIZOPHRENIC." AR 1643. But the second comment

11  is merely an opinion regarding a diagnosis, which as just discussed the ALJ did not err in finding

12  to be unsupported by the record. In addition, although the observation that plaintiff is "unusual"

13  does indicate the existence of some potential psychological issues – and Dr. Thorpe did note that

14  she "SEEMS A LITTLE COGNITIVELY SLOW" – the remainder of Dr. Thorpe's mental status

15  results are unremarkable. AR 1642-1644. And to the extent there is ambiguity and/or

16  inconsistency in those results, it is solely the duty of the ALJ to resolve them. *Sample v.

17  Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). For the foregoing reasons the ALJ's decision was

18  rational, and therefore the Court will not overturn it. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

19  2007); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

20      Lastly, plaintiff asserts the ALJ improperly relied on her activities as a basis for rejecting

21  Dr. Thorpe's opinions. The Court agrees. The ALJ noted that plaintiff "attended community

22  college in person on a regular basis, where she completed her nursing assistant degree and

23  obtained a B in chemistry," lived alone, "attended to all normal daily activities," and "functioned

24

25

as desired." AR 1526. Plaintiff testified, however, that her school attendance was not full-time, her instruction was flexible, she was allowed additional time to complete tests, and she received accommodations during classes. AR 2022, 2035, 2040.

As to the ability to live alone, perform all normal daily activities, and function "as desired," the ALJ does not explain how this general description of plaintiff's activity level establishes she is able to perform household chores for a substantial part of the day or other activities that are transferable to a work setting. *Smolen v. Chater*, 80 F.3d 1273, 1284 and n.7 (9th Cir. 1996) (noting further that claimants need not be "utterly incapacitated" to be eligible for disability benefits, and that "many home activities may not be easily transferable to a work environment").

### C. The ALJ Did Not Improperly Fail to Reweigh Dr. Parlatore's Opinions

As noted above, plaintiff underwent two psychiatric evaluations performed by Anselm Parlatore, M.D., in 2009, and again in 2014. AR 222-226, 1630-1633. In his 2014 evaluation report, Dr. Parlatore opined that plaintiff was markedly to severely impaired in four mental functional areas. AR 1632. Plaintiff argues the ALJ erred in failing to mention or provide any weight to the 2014 opinion.

As discussed previously in regard to the opinion evidence from Dr. Osea, the ALJ failed to fully comply with the Court's second remand order by merely stating he was incorporating by reference the medical source opinions from the prior ALJ's decision, without indicating whether he actually had found reweighing those opinions was necessary or appropriate. Also as discussed previously, however, the ALJ's error was harmless given the other independent valid reasons the ALJ provided for discounting Dr. Osea's opinion.

For the same reasons, the Court finds any error in not expressly addressing the opinion evidence from Dr. Parlatore to be harmless. First, as noted, the Court's direction that the ALJ reweigh the other medical opinions in the record "as appropriate" was specifically in the context of the ALJ's re-evaluation of Dr. Osea's opinion, and the ALJ properly rejected that opinion. Second, while the limitations Dr. Parlatore assessed may be more severe than those the ALJ adopted, plaintiff offers no argument or support for why the reasons the prior ALJ offered for rejecting those limitations, and which the ALJ incorporated by reference, are not supported by substantial evidence. AR 1523, 1552. And at least one of those reasons – that Dr. Parlatore's opinions "contrasts sharply with the claimant's . . . appearance and performance during multiple evaluations" (AR 1552) – does appear to be supported by the record. *See* AR 285, 427-447, 455, 503-513, 517, 519, 996, 1002-1038, 1053, 1055, 1057, 1181, 1247-1309, 1317-1319, 1600-1601, 1642-1644, 1713-1714, 1807-1814, 1824-1838, 1850-1871, 1878-1880.

III. <u>The ALJ Did Not Err in Assessing Plaintiff's RFC or in Determining Plaintiff to Be Not Disabled at Step Five</u>

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from

the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000).

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations, which forms the residual functional capacity (RFC) determination, "'must be accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring)).

Here, the ALJ found plaintiff could perform a modified range of light work, with the ability to perform the mental requirements for semi-skilled occupations. AR 1517. The ALJ further found plaintiff could perform other jobs existing in significant numbers in the national economy based on that RFC at step five. AR 1527-1528. Plaintiff argues the ALJ erred in so finding, relying on the other alleged errors addressed above concerning the ALJ's reliance on the

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 15

CDIU report and his evaluation of the medical opinion evidence in the record. But because none of the errors the ALJ committed were actually harmful, plaintiff has failed to carry her burden of demonstrating the ALJ erred in assessing her RFC or in finding her not disabled at step five.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 19th day of April, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge